IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TEAGUE A. DUNCAN**                                                                                    **PLAINTIFF**

v.                                                                                  CAUSE NO. 1:14CV332-LG-JCG

**GABRIEL J. SIMON, II; USAA CASUALTY
INSURANCE COMPANY; and LM GENERAL
INSURANCE COMPANY**                                                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER CONCERNING
### THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are the Motion for Partial Summary Judgment [10] filed by LM General Insurance Company, the Motion for Partial Summary Judgment [16] filed by Teague A. Duncan, and the Motion for Summary Judgment [18] filed by USAA Casualty Insurance Company.  The Motions filed by LM General and Duncan have been fully briefed by the parties, but USAA did not file a reply in support of its Motion.  After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the Motion for Partial Summary Judgment filed by LM General should be granted.  The Motion for Partial Summary Judgment filed by Duncan and the Motion for Summary Judgment filed by USAA are denied.

### FACTS

On February 7, 2014, Duncan suffered serious injuries in a single-vehicle automobile accident that occurred on Interstate 59 in Pearl River County, Mississippi.  When the accident occurred, Duncan was a passenger in a vehicle owned and operated by Gabriel J. Simon, II.  It is undisputed that the accident was

caused solely by the negligence of Simon.

Simon's vehicle is insured by a USAA Casualty Insurance Company policy providing $25,000 in liability coverage and $25,000 in underinsured motorists ("UM") coverage.  The USAA policy provides:

> The limits of liability under [UM bodily injury] coverage (each person and each accident) . . . shall be reduced by all sums paid because of the [bodily injury] . . by or on behalf of the owner or operator of the uninsured motor vehicle.  This includes all sums paid under Part A.

(USAA's Mot., Ex. B at 12, ECF No. 18-2).  Part A of the policy provides liability coverage.  (*Id.* at 4).

Duncan is the named insured on a LM General policy providing $100,000 in UM coverage.  (LM's Mot., Ex. C at LM-050, ECF No. 10-3).  Duncan is also an insured under his father's LM General policy, which insures three vehicles and provides $250,000 in UM coverage.  (LM's Mot., Ex. D at LM-002, ECF No. 10-4).  Both LM General policies at issue provide:

> We will pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an "insured" . . . is legally entitled to recover from the owner or operator of an . . . "underinsured motor vehicle" because of:
> 1. "Bodily injury" sustained by an "insured" and caused by an accident . . . .

(LM's Mot., Ex. C at LM-075, ECF No. 10-3; LM's Mot., Ex. D at LM-027, ECF No. 10-4).  Both LM General policies also contain the following clause:

> B.  Any damages payable under this coverage:
> 1. Shall be reduced by all sums paid because of "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible.

(LM's Mot., Ex. C at LM-076, ECF No. 10-3; LM's Mot., Ex. D at LM-028, ECF No.

10-4).  Duncan's father's policy, which insures three vehicles, contains the following clause:

> LIMIT OF LIABILITY
> A.  The Limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident . . . .  This is the most we will pay regardless of the number of:
> 1. "Insureds";
> 2. Claims made; or
> 3. Vehicles or premiums shown in the Declarations.

(LM's Mot., Ex. D at LM-028, ECF No. 10-4).  Stacking of vehicles is also prohibited by notices contained on the declarations page of the policy and on the policy notice referred to as "Form C."  (LM's Mot., Ex. D at LM-002, LM-043, ECF No. 10-4).

Duncan filed this lawsuit against Simon, USAA, and LM General, seeking payment for damages he suffered in the February 7, 2014, accident.  He also seeks extra-contractual and punitive damages from LM General.  Simon has not made an appearance in this lawsuit, but USAA has filed a Motion for Summary Judgment, and Duncan and LM General have each filed Motions for Partial Summary Judgment.  The issues presented by these three Motions are: (1) whether Duncan is entitled to recover UM coverage under the USAA policy; (2) whether the amount of UM coverage provided by the USAA policy should be considered when determining the extent to which Simon was underinsured under Duncan's LM General policy; and (3) whether the three vehicles insured by Duncan's father's policy can be stacked to increase the amount of UM coverage provided under that policy.

# DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I. WHETHER DUNCAN IS ENTITLED TO UM COVERAGE UNDER THE USAA POLICY

In its Motion for Summary Judgment, USAA argues that Duncan's claims filed should be dismissed, because Duncan is not entitled to UM coverage under the USAA policy. The parties agree that Mississippi law should be applied when interpreting the USAA policy. Pursuant to the plain language of the USAA policy, any liability payment made under the policy would offset the UM coverage available under the policy. (*See* USAA's Mot., Ex. B at 12, ECF No. 18-2). This offset provision is enforceable under Mississippi law. *See Jeffcoat v. Amer. Nat'l Prop. & Cas. Co.*, 919 So. 2d 982, 986 (¶17) (Miss. Ct. App. 2005); *see also State*

*Farm Mut. Auto. Ins. Co. v. Kuehling*, 475 So. 2d 1159, 1163 (Miss. 1985) (reversed on other grounds).

In his response to USAA's Motion, Duncan does not dispute that he would be unable to recover under both the liability and UM portions of the policy. However, Duncan asserts that USAA has not made any payment under the policy at this time. Although USAA tendered the policy limits under the portion of its policy providing liability coverage, Duncan states that he did not accept the offer because settlement with USAA would impair Duncan's right to seek benefits from USAA's insured and others. USAA did not file a reply to Duncan's response, and thus, it has not disputed Duncan's argument that he has not been paid pursuant to the USAA policy. The Court cannot award USAA any form of credit for making a liability payment under the policy, where no such payment has been made. As a result, the Court finds that USAA's Motion for Summary Judgment is premature and must be denied at this time.

## II. WHETHER THE AMOUNT OF UM COVERAGE PROVIDED BY THE USAA POLICY SHOULD BE CONSIDERED WHEN DETERMINING THE EXTENT TO WHICH SIMON WAS UNDERINSURED UNDER DUNCAN'S LM GENERAL POLICY

Duncan and LM General have filed cross-motions seeking partial summary judgment regarding the amount of UM coverage provided under Duncan's LM General policy. Duncan is a Virginia resident, and the parties do not dispute that Virginia law applies to the interpretation of Duncan's policy. In the policy, LM General agrees to pay UM benefits in accordance with Va. Code Ann. § 38.2-2206,

which provides:

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury or property damage . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

Va. Code Ann. § 38.2-2206(B). The Virginia Supreme Court has held that "in applying § 38.2-2206(B), a passenger in a single vehicle accident is not entitled to include the [UM] coverage contained in the tortfeasor's automobile liability insurance policy when determining the extent to which the tortfeasor's vehicle was underinsured." *Trisvan v. Agway*, 492 S.E.2d 628, 630 (Va. 1997). Thus, a passenger cannot stack his own UM coverage with the UM coverage contained in the tortfeasor's policy in order to increase the amount of UM coverage payable under the passenger's policy. *See id.*

For example, in *Trisvan*, the tortfeasor's policy provided up to $25,000 in liability coverage and up to $25,000 in UM coverage, while the passenger was insured under a policy providing up to $100,000 in UM coverage. *Id.* at 628. The passenger argued that the $100,000 in UM coverage available under his own policy should be combined with the $25,000 limits of UM coverage contained in the tortfeasor's policy, and then the total figure of $125,000 should be compared with the tortfeasor's $25,000 liability limits, leaving $100,000 recoverable under the passenger's policy. *Id.* The Virginia Supreme Court disagreed, holding that the tortfeasor's $25,000 liability limits should be subtracted from the passenger's

$100,000 limits, leaving $75,000 in UM coverage available under the passenger's policy, because only one vehicle was involved in the accident. *Id.* at 630.

Duncan attempts to recast *Trisvan* as a decision that concerned which insurer is entitled to an offset, but *Trisvan* actually considered the proper calculation for determining the extent to which a vehicle is underinsured. *See id.* The court held that the tortfeasor's UM limits should not be considered in this analysis. *Id.* One of the considerations behind the decision was that "[p]olicy provisions prohibiting recovery under both the liability and [UM] portions in a single vehicle accident have been upheld on both statutory and public policy grounds" in other jurisdictions. *Id.* Thus, the *Trisvan* court contemplated the exact scenario presented by Duncan's lawsuit– a situation in which the tortfeasor's insurance policy prohibits an insured from recovering under both the liability and UM sections of the policy. *See id.* The *Trisvan* court reasoned that the tortfeasor's vehicle could never be considered underinsured if its liability limits are subtracted from its UM limits, because the Virginia UM statute prohibits UM coverage from exceeding the amount of liability coverage offered under a single policy. *Id.* at 629.

Since the present case arose out of a single-vehicle accident, the *Trisvan* decision is binding precedent. To determine the extent to which Simon was underinsured, this Court must subtract Simon's $25,000 in liability coverage from Duncan's $100,000 in UM coverage, leaving $75,000 in coverage available under Duncan's LM General policy. LM General's Motion for Partial Summary Judgment

is granted with respect to this issue, and Duncan's Motion is denied.

### III. WHETHER THE THREE VEHICLES INSURED BY DUNCAN'S FATHER'S POLICY CAN BE STACKED TO INCREASE THE AMOUNT OF UM COVERAGE PROVIDED UNDER THAT POLICY

Duncan and LM General have also filed cross-motions seeking partial summary judgment concerning whether stacking is permitted under Duncan's father's LM General policy. The parties do not dispute that Virginia law applies to the policy. The Virginia Supreme Court has held that "it is now the rule in Virginia that the stacking of UM coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." *Goodville Mut. Cas. Co. v. Borror*, 275 S.E.2d 625, 627 (Va. 1981); *see also Dooley v. Hartford Accident & Indem. Co.*, 716 F.3d 131, 137 (4th Cir. 2013). In *Goodville*, the court held that an automobile policy unambiguously prohibited stacking even though two vehicles were insured and two separate premiums were charged for UM coverage. *Id.* at 628.

The LM General policy at issue in the present case provides:

LIMIT OF LIABILITY
A. The Limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident . . . . This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made; or
3. Vehicles or premiums shown in the Declarations.

(LM's Mot., Ex. D at LM-028, ECF No. 10-4). The Declarations page states: "Please

note: Coverages and limits shown are specific to a covered vehicle. Regardless of the number of vehicles listed, Bodily Injury Limits in Part C of this Declarations page may not be aggregated or 'stacked' to increase your overall insured limits." (*Id.* at LM-002). The Declarations page provides the following limits of coverage:

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | | |
|---|---|---|---|---|---|
| | | | VEH 1 | VEH 2 | VEH 3 |
| A. Liability | | | | | |
|   Bodily Injury | $ 250,000 | Each Person | $243 | $239 | $578 |
| | $ 500,000 | Each Accident | | | |
|   Property Damage | $ 100,000 | Each Accident | $167 | $153 | $548 |
| C. Uninsured Motorists | | | | | |
|   **Uninsured Motorists** | **$ 250,000** | **Each Person** | $33 | $30 | $112 |
|   **Bodily Injury** | **$ 500,000** | **Each Accident** | | | |
|   Property Damage | $ 50,000 | Each Accident | | | |

(*Id.*) (emphasis added).

In his Response filed in opposition to LM General's Motion, Duncan argues: "All three vehicles have UM coverage, since a premium was paid for each vehicle for UM coverage. Since coverages are specific to a covered vehicle, each covered vehicle for UM coverage would have UM coverage specific to that vehicle." (Pl.'s Resp. at 12, ECF No. 15). Duncan asserts that the sentence in the Declarations that prohibits stacking creates ambiguity, because it contradicts the preceding sentence providing that "[c]overage and limits are specific to a covered vehicle." (LM's Mot., Ex. D at LM-002, ECF No. 10-4). Duncan further argues that the prohibition of stacking only applies to the $500,000 each accident limit, because the $500,000

each accident limit is placed next to "Bodily Injury"under Coverage C in the Declarations.  Duncan claims, "At a minimum, the [D]eclarations page must be found to be ambiguous and interpreted in favor of Mr. Duncan." (Pl.'s Resp. at 14, ECF No. 15).

The Virginia Supreme Court has provided the following guidance for interpreting insurance policies:

> It is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.  Courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document.  Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein . . . .  Where two constructions are equally possible, that most favorable to the insured will be adopted.  Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer.

*TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012) (internal quotation marks and citations omitted).  Courts are required to "construe insurance policies in their entirety and harmonize all provisions when reasonably possible." *Dooley*, 716 F.3d at 137 (citing *Va. Farm Bureau Mut. Ins. Co. v. Williams*, 677 S.E.2d 299, 302 (Va. 2009)).

The only reasonable interpretation of the Declarations page in the LM General policy at issue is that the $250,000 each person policy limit refers to UM

bodily injury coverage.  There is no other type of coverage to which this limit could refer.  The prohibitions of stacking included on the Declarations page of the policy and in the limit of liability section of the UM coverage form clearly state that the bodily injury limits of the three vehicles cannot be stacked to increase UM coverage, regardless of the number of vehicles covered or premiums charged.  The Virginia Supreme Court has held that an insurer may prohibit stacking even while charging separate premiums for UM coverage.  *See Goodville*, 275 S.E.2d at 628.  As a result, the LM General policy, when read in its entirety, unambiguously prohibits stacking, and Duncan can recover no more than $250,000 in UM coverage under his father's policy.  LM General's Motion for Partial Summary Judgment as to this issue is granted, and Duncan's Motion for Partial Summary Judgment is denied.

## CONCLUSION

For the foregoing reasons, the Court finds that USAA's Motion for Summary Judgment and Duncan's Motion for Partial Summary Judgment should be denied. LM General's Motion for Partial Summary Judgment is granted.  The maximum amount of coverage that Duncan can recover under his own LM General policy is $75,000, and the maximum amount of coverage he can recover under his father's policy is $250,000.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment [10] filed by LM General Insurance Company is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for

Partial Summary Judgment [16] filed by Teague A. Duncan, and the Motion for Summary Judgment [18] filed by USAA Casualty Insurance Company are **DENIED**.

**SO ORDERED AND ADJUDGED** this the 25th day of June, 2015.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE